# No. 16-1036

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DANIEL E. CARPENTER and
GRIST MILL CAPITAL, LLC,

Plaintiffs-Appellees

v.

JOHN KOSKINEN,
COMMISSIONER OF INTERNAL REVENUE, et al.,

Defendants-Appellants

ON APPEAL FROM THE ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

REPLY BRIEF FOR THE APPELLANT

DAVID HUBBERT
  *Acting Assistant Attorney General*

S. ROBERT LYONS        (202) 514-5396
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
GREGORY VICTOR DAVIS    (202) 514-5396
MARK S. DETERMAN       (202) 514-9245
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
DEIRDRE M. DALY, ESQ.
  *United States Attorney*

## TABLE OF CONTENTS

Table of Contents..................................................................... i
Table of Authorities .............................................................. ii

*Background* ...........................................................................2

*Argument* ..............................................................................7

I.     Jurisdiction for the Appeal.......................................7

    A.  The Order was a Final Decision under 28 U.S.C.
       § 1291.................................................................7
    B.  Order as an Injunction under 28 U.S.C.
       § 1292(a)(1)....................................................13
    C.  Mandamus pursuant to 28 U.S.C. § 1651(a)
       § 1291..............................................................16
    D.  Government has not "waived" jurisdiction for this
       appeal ..............................................................18

II.    This Is Court Should Vacate The District Court's "Return
      and Destroy" Order ................................................20

Conclusion ...........................................................................30
Certificate of Compliance .....................................................31
Certificate of Service ............................................................32

# TABLE OF AUTHORITIES

<u>Cases</u>

*Athan v. Hartford Fire Ins. Co.*, 73 F.2d 66 (2d Cir. 1934) ....................................18

*Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978) ................................................19

*Caribbean Trad. & Fid. v. Nigerian Nat'l Petro.*, 948 F.2d 111 (2d Cir. 1991) ....20

*Carroll v. United States*, 354 U.S. 394 (1957) ........................................................8

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981)...................................... 13, 14

*Chase Manhattan Bank v. Turner & Newall*, 964 F.2d 159 (2d Cir. 1992)...........17

*Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367 (2004).......... 16, 17

*Chicago, B. & Q.R. Co. v. Willard*, 220 U.S. 413 (1911) .....................................18

*Cuomo v. Barr*, 7 F.3d 17 (2d Cir. 1993).............................................................14

*De Almeida v. United States*, 459 F.3d 377 (2d Cir. 2006) ..................................28

*Di Bella v. United States*, 369 U.S. 121 (1962).............................................. 10-12

*Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478 (1978) .......................13

*General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430 (1932) ................13

*Glinka v. Maytag Corp.*, 90 F.3d 72 (2d Cir. 1996) ............................................26

*Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318 (2d Cir. 2001) .......................19

*Gould v. Control Laser Corp.*, 650 F.2d 617 (5th Cir. 1981)...............................13

*HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995) ...................................15

*In re Bethlehem Steel Corp.*, 144 Fed. App'x 167 (2d Cir. 2005)................... 26, 27

*In re City of New York*, 607 F.3d 923 (2d Cir. 2010)............................................18

*Johann Maria Farina G.D.M. v. Roger & Gallet*, 296 F.2d 119 (2d Cir. 1961) ....27

*JP Morgan Chase v. Altos Hornos de Mexico*, 412 F.3d 418 (2d Cir. 2005) .........25

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002) ........................................19

*Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394 (1976) ........................17

*Madden v. Town of New Haven*, 359 Fed. App'x 204 (2d Cir. 2009).............. 26, 27

*Marcaida v. Rascoe*, 569 F.2d 828 (5th Cir. 1978) ..............................................19

*Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004) .........................................19

*Rufu v. United States*, 20 F.3d 63 (2d Cir. 1994).................................................22

*Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008) ...........................................................16

*Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216 (2d Cir. 2006).........20

*U. S. Envelope Co. v. Transo Paper Co.*, 229 F. 576 (D. Conn. 1916)...................19

*United States ex rel. Bauer v. Shaughnessy,* 178 F.2d 756 (2d Cir. 1949).............27

*United States v. An Antique Platter of Gold,* 1995 WL 758762 (SDNY 1995) ......25

*United States v. Carpenter,* 190 F. Supp. 2d 260 (D. Conn. June 6, 2016) ...........23

*United States v. Carpenter*, 2016 WL 3351906 (D. Conn. 2016) ........................1, 6

*United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013) ......................................1

*United States v. Dean*, 80 F.3d 1535 (11th Cir. 1996) .........................................25

*United States v. Filing*, 410 F.2d 459 (6th Cir. 1969) ............................................9

*United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014).............................................6

*United States v. Garner*, 749 F.2d 281 (5th Cir. 1985) ........................................13

*United States v. Heckinger*, 163 F.2d 472 (2d Cir. 1947) ..................................8, 9

*United States v. Huggins*, 2013 WL 1728269 (S.D.N.Y. March 22, 2013) ...........26

*United States v. One 1987 Jeep Wrangler*, 972 F.2d 472 (2d Cir. 1992)......... 25, 28

*Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council*, 839 F.2d 69 .......14
*Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985) ....................................9
*Wallace v. Kato*, 549 U.S. 384 (2007) ..................................................25
*Weight Watchers of Phil. v. Weight Watchers Intl*, 455 F.2d 770 (2d Cir. 1972) ...15

## Statutes

18 U.S.C. § 3731 ...................................................................10
28 U.S.C. § 1651(a) ....................................................... 1, 16, 17
28 U.S.C. § 1291 ...................................................................7
28 U.S.C. § 1292(a)(1) ..................................................... 7, 13

## Rules

Fed. R. App. P. 28 ................................................................19
Fed. R. App. P. 28(a)(2) .........................................................19
Fed. R. App. P. 32(a)(7)(B) ......................................................31
Fed. R. App. P. 4(b) .............................................................31
Fed. R. Crim. P. 41(g) ...................................................... passim

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

─────────────

DANIEL E. CARPENTER and
GRIST MILL CAPITAL, LLC,
Plaintiffs-Appellees

v.

JOHN KOSKINEN,
COMMISSIONER OF INTERNAL REVENUE, et al.,
Defendants-Appellants

─────────────

ON APPEAL FROM THE ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

─────────────

REPLY BRIEF FOR THE APPELLANT

─────────────

In this civil *Bivens* case seeking monetary damages and the return of

property seized pursuant to a warranted search, the district court (Underhill, J.)

ordered the government to "return and . . . destroy" documents. Some of the

documents that Judge Underhill ordered returned and destroyed were being

used in a criminal case pending against Carpenter before a different district

judge (Chatigny, J.). [1]  Judge Chatigny denied Carpenter's motion for

─────────────

[1] Carpenter recently completed his sentence from a conviction in
Massachusetts for mail and wire fraud, and is currently on supervised release. *See*
*United States v. Carpenter*, 736 F.3d 619, 623-24 (1st Cir. 2013). Carpenter was
convicted on June 6, 2016 in the criminal bench trial before Judge Chatigny. *See*
*United States v. Carpenter*, 2016 WL 3351906 (D. Conn. 2016) (No. 3:13-cr-226-
RNC). Sentencing in that case has not yet been scheduled due to extensions
granted for post-conviction motions; in fact, Carpenter filed his motions for
acquittal and for a new trial on March 15, 2017.

suppression and for return of documents that Judge Underhill had ordered returned and destroyed. Informing Judge Underhill that the documents were subject to inconsistent orders – one ordering return and destruction, and one denying that relief and permitting the documents to be used in the criminal prosecution – the government sought reconsideration. After Judge Underhill denied reconsideration, the government filed this appeal. For the reasons stated below, this Court has jurisdiction to grant relief to the government and should reverse the district court's Rule 41(g) order requiring the government to "return and destroy" the records.

## Background

In April 2010, criminal investigators of the IRS, as part of an investigation supervised by the United States Attorneys' Office for the District of Wisconsin, executed a search warrant at a property in Connecticut. (*See Carpenter*, No. 3:13-cr-226-RNC, R. 83-2 at 2-3.) IRS agents seized 322 boxes of documents, images of 11 computer hard-drives, one thumb-drive, and one external hard-drive. (*See* GA 136; R. 59-1 (Giampietro Decl. at ¶ 2).) The USAO in Connecticut, which was conducting a separate criminal investigation that resulted in the case before Judge Chatigny, subsequently obtained a second search warrant and a grand jury subpoena for certain of the records the IRS had seized.

Shortly after the April 2010 search, two civil actions for return of property under Rule 41(g) were filed in the District of Connecticut and consolidated before District Judge Alfredo V. Covello.  In one case, Benistar Administrative Services, Inc. ("BASI") identified itself as the "owner and custodian" of all property seized during the execution of the search warrant.  (R. 48-1 at 1-2; *see Benistar Admin. Servs., Inc. v. IRS*, No. 3:10-MC-60-AVC (D. Conn.), R. 1 at 4.)  A second Rule 41(g) case was brought by Grist Mill Capital, LLC – a plaintiff in this case. *Pettibone Tavern, LLC v. IRS*, No. 3:10-MC-64-AVC (D. Conn.).  Carpenter, in his individual capacity, was not a named-party to either Rule 41(g) action, but he controlled both BASI and Grist Mill Capital. *See Carpenter*, 2016 WL 3351096, at *9-11; *Iantosca v. Benistar Admin. Servs., Inc.*, 567 Fed. App'x 1, 2-3, 7 (1st Cir. 2014) (Souter, J.) (Benistar and the "various . . . business entities associated with [Carpenter]" were properly found to be "alter egos of Carpenter.").

In January 2011, the parties to both Rule 41(g) motions, including plaintiff Grist Mill Capital, LLC, jointly settled the Rule 41(g) litigation when the government agreed to return the original documents after a reasonable opportunity to copy them, and the movants agreed to stay their Rule 41(g) motions until they received the property.  (GA 192; *Pettibone Tavern,* No. 3:10-MC-64-AVC, R. 43 (Stipulation).)  Boxes that contained what the government determined to be potentially relevant documents were then moved to the offices of BASI'S

Connecticut counsel, Halloran & Sage LLP. Boxes with documents that the government determined were not potentially relevant were returned to BASI. (GA 136-39; R. 59-1 (Giampietro Decl. at ¶ 8.)) Thus, pursuant to the settlement agreement, the government returned the originals of 320 of the 322 boxes to BASI or Halloran & Sage LLP.[2] (*Id.*) Two boxes of originals were retained by the government. In addition, mirror-image copies of the potentially relevant electronically stored information were retained by the government. (*Id.*; GA 53.) As mentioned above, the USAO in Connecticut later obtained a second search warrant for certain of the records seized by the IRS and held at Halloran & Sage.

In April 2013, Plaintiffs-Appellees Carpenter and Grist Mill Capital, LLC ("Appellees") filed this civil *Bivens* suit in the District of Connecticut seeking money damages against the Commissioner of the IRS, the Chief of IRS-Criminal Investigation, the IRS case agent, and 72 "John Doe" agents involved in executing the search warrant. (R. 1, 34.) Appellees' second amended complaint also sought a declaratory judgment regarding the return of property (R. 34 at 6 (Second Amended Complaint)):

---

[2] This fact is mostly obscured in Appellees' response brief, but made clear in the statements of defense counsel in the court below: "I don't want to have to go to some third location to read my own property. That's an enormous inconvenience ... to access my own papers." (GA 82; R. 58 at 15.)

32.  Pursuant to Federal Rule of Criminal Procedure 41(g), the plaintiffs hereby move this Court to also enter a declaratory judgment that the raid of April 20, 2010 was, in fact, an unreasonable and unlawful search and seizure of property without a valid search warrant and to issue an order for the return of the property that has been unlawfully seized by the government in violation of the Fourth and Fifth Amendments to the Constitution of the United States. The unlawful and unreasonable search and seizure occurred more than four years ago.  To this date, only four boxes out of 322 have been returned to their rightful owners.

Appellees prayed for "*[i]njunctive* relief in the form of an order requiring that the material seized be returned to its rightful owner(s)." (*Id.* at 6 (emphasis added).)  The case was assigned to Judge Underhill.

The government moved to dismiss the *Bivens* suit for lack of jurisdiction and failure to state a claim.  (R. 38-40.)  Appellees did not file an independent Rule 41(g) motion or seek summary judgment on their Rule 41(g) claim. Judge Underhill, despite his statement during the hearing on the government's motion to dismiss that "I'm not reaching the merits today of the 41(g) issue because what I have before me is a motion to dismiss" (R.58 at 7-8), issued an order factually adopting Appellees' allegations regarding the government's retention of documents.  Without holding an evidentiary hearing, the district court seemingly accepted a series of factual assertions in the complaint as true, proceeded to the merits of the Rule 41(g) claims, and ordered the government to return originals and destroy paper and electronic copies of the seized

documents based on his determination that the records were non-responsive and been retained too long.[3]  (R. 55 at 8-16.)

The government moved for reconsideration of court's Rule 41(g) order. (R. 61.)  While that motion was pending, Judge Chatigny issued an order in the criminal case refusing to suppress the very same documents and denying an identical Rule 41(g) claim for return of the documents.  *Carpenter*, 2015 WL 9461496 (Order Denying Motion to Suppress) (No. 3:13-cr-226-RNC, R. 155). The government then supplemented its still-pending motion for reconsideration before Judge Underhill, advising the court of Judge Chatigny's order denying Carpenter's motion to suppress and for return of documents.  (R. 61.) Appellees did not file a response to the government's motion for reconsideration. Notwithstanding Judge Chatigny's order, Judge Underhill issued a minute order denying the motion for reconsideration (R. 63):

> ORDER denying [59] Motion for Reconsideration without prejudice to renewal following the Second Circuit's ruling in *United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), reh'g en banc granted, 791 F.3d 290 (2d Cir. 2015).  The June 4, 2015 Ruling and Order is stayed pending further order.

---

[3] The court made no finding that there was "an unreasonable and unlawful search and seizure of property without a valid search warrant" or that the property ordered returned had been "unlawfully seized" as alleged in the *Bivens* complaint. (*See* R. 34 at 6 (Amended Complaint).)

The government appealed and filed its opening brief on August 26, 2016.

Appellees filed a motion to dismiss this appeal, arguing (Motion at 6-7), *inter alia*, that "the district court's order requiring the government to return or destroy records not a 'final decision' under 28 U.S.C. § 1291." The government opposed that motion. A motions panel of this Court ordered that the motion be referred to the merits panel and directed the parties to brief, in addition to all other relevant issues, the following questions: "(1) aside from Appellant's invocation of 28 U.S.C. § 1291, whether this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1); (2) if so, whether this Court should exercise jurisdiction under § 1292(a)(1) despite Appellant's failure to raise § 1292(a)(1) in its opening brief; and (3) if this Court lacks jurisdiction under § 1291 and § 1292(a)(l), whether it should construe the Government's notice of appeal as a petition for a writ of mandamus, and, if so, whether mandamus relief should be granted." (Order, January 10, 2017.)

## ARGUMENT

### I. JURISDICTION FOR APPEAL

#### A. The Order was a Final Decision under 28 U.S.C. § 1291

This Court has jurisdiction to review all "final decisions" of the district courts within this Circuit. *See* 28 U.S.C. § 1291. The Supreme Court has stated that certain orders relating to a criminal case may possess "sufficient independence" from the main course of the prosecution to warrant treatment as

"final decisions" under § 1291. *Carroll v. United States*, 354 U.S. 394, 403 (1957). Although the *Carroll* Court held that a post-indictment suppression order was not of sufficient independence to be a final appealable decision, the Court noted that it had previously held that an order requiring the government to return property at times is such a collateral determination that is immediate appealable. *Id.* at 404. ("under certain conditions orders for the . . . return of illegally seized property are appealable at once . . . where the emphasis is on the return of property rather than its suppression as evidence. In such cases, as appropriate, the Government . . . has been permitted to appeal from an adverse decision.")

This Court has also recognized that a district court's order requiring the government to return property was a final decision subject to immediate appeal. In *United States v. Heckinger*, 163 F.2d 472 (2d Cir. 1947), Judge Learned Hand stated that "at first blush" the district court's order, made before resolution of the forfeiture action, that the government return a seized vehicle "would seem to be interlocutory." *Id.* at 473. However, Judge Hand reasoned that "[w]hen the claimant gets back the car, he is free, if he is so disposed, to continue those activities" from which the seizure of the vehicle was meant to protect the public. Thus, only allowing an immediate appeal would protect the interests of the government and provide an adequate remedy if the order below

had been issued in error.  *Id.*  The government's interest here is even stronger than in *Heckinger*, as the district court's order would require the destruction of records that are relevant to a still-pending criminal prosecution.[4]

Other Circuits to address the question have also found that an order directing the government to turn over or destroy records is a final, appealable decision.  *See United States v. Filing*, 410 F.2d 459, 461 (6th Cir. 1969) (discussing an independent Rule 41 action and concluding: "We do not know how any order could be drawn which would be more final than the one entered by the District Judge, which ordered the Government 'to return forthwith to the Defendant all property seized by the search warrant.'"); *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (citing *Filing*).  The basis of their reasoning is that a district court's order requiring that the government return or destroy documents in its possession is different than merely ordering suppression of those documents: once the documents are returned, the party receiving the documents can destroy them, making any later attempt to seek redress through appellate review meaningless.  *See Filing*, 410 F.2d at 461; *Heckinger*, 163 F.2d at 473.

---

[4] As noted in more detail in our opening brief, the order required the return and destruction of documents that were also relevant to a then-pending Wisconsin criminal investigation.

Appellees rely on *Di Bella v. United States*, 369 U.S. 121 (1962), in which the Supreme Court issued one opinion deciding the appealability of suppression orders issued in two separate cases: (1) In *Di Bella*, an Eastern District of New York case, a suppression motion was filed pre-indictment and denied post-indictment without prejudice to renew at trial; (2) in *Koenig*, a motion for suppression and return of property was filed in the Southern District of Florida, and after an indictment was returned in the Southern District of Ohio, the Florida court granted suppression but denied the return of property claim without prejudice to renew the motion with the Ohio court. In *Di Bella*, the defendant appealed the denial of the suppression motion and in *Koenig*, the government appealed the grant of the suppression motion. (The defendant in *Koenig* did not appeal the denial of the motion to return property.) The Court held that an order deciding a suppression motion that would not have been appealable had the motion been filed post-indictment was not appealable merely because the motion was filed pre-indictment. 369 U.S. at 130 ("We hold, accordingly, that the mere circumstance of a pre-indictment motion does not transmute the ensuring evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability"). *Cf.* 18 U.S.C. § 3731 (post-*Di Bella*, government granted statutory authority to appeal suppression in criminal cases).

*Di Bella* further opined, however, that "if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant[, then] the proceedings [can] be regarded as independent." *Id*. at 131-32. On this point, we preliminarily note two facts: (1) movant/appellee Grist Mill Capital is not a party to the criminal case; and (2) Judge Chatigny found that Carpenter, the sole defendant in the criminal case, lacked standing to seek return of the vast majority of the records at issue here, since they were in the form of corporate records; Judge Chatigny held that Carpenter had standing to challenge the search warrant only to the extent that items seized included items from his personal office and office computer. (GA 177-78, 185-88; R. 61-1). *See Carpenter*, 2015 WL 9461496 at *2-3, 7.

A criminal defendant has an adequate remedy at law in appealing the final judgment in a criminal case, as an appellate court can reverse the conviction by holding that the evidence should have been suppressed. *See Di Bella*, 369 U.S. at 129-30. The government also has remedies at law if a suppression motion is granted. *Id.* An order requiring the government to return property to the defendant is entirely different, as the defendant is free to dispose of, alter, or destroy the property leaving the government without any remedy should the order have been entered in error.

Indeed, *Di Bella* noted that a civil order should be considered a final,

appealable order where: (1) the order "direct[s] an immediate transfer of property"; (2) the order is collateral to the principal litigation; (3) and "the practical effect of the order will be irreparable by any subsequent appeal." *Di Bella* at 125-26 (rejecting "self-defeating . . . constructions" of finality). All three criteria are present in the district court's order here.

The cases Appellees rely on for the proposition that the denial of a Rule 41(g) motion for return of property is not a final decision do not mandate the conclusion that no appeal lies from district court's order that the government return and destroy documents. The cases relied upon by the Appellees involve a procedural context in which a court rejected a defendant's attempt to circumvent the prohibition against interlocutory appeals of the denial of a suppression motion. Here, the government is not attempting to circumvent rules regarding interlocutory appeals, but instead attempting to protect its interest in a pending criminal case after a collateral attack on that case through the filing of a collateral claim in a parallel civil action. The order to "return and destroy" is final and appealable.

### B. Order as an Injunction under 28 U.S.C. § 1292(a)(1)

Even if this Court does not view the district court's order as a final decision, this Court should construe the order as an injunction prohibiting the government from retaining the subject records. Section 1292(a)(1) gives this

Court jurisdiction over interlocutory orders "granting, continuing, modifying, refusing, or dissolving injunctions." In *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), the Supreme Court articulated the general circumstances under which § 1292(a)(1) would permit the appeal of an interlocutory injunctive order. The Court first construed § 1292(a)(1) to include not only orders technically granting or denying injunctions, but also orders that, as here, have the practical effect of doing so. *Id.* at 84; *see also United States v. Garner*, 749 F.2d 281 (5th Cir. 1985); *Gould v. Control Laser Corp.*, 650 F.2d 617, 621 (5th Cir. 1981). A clear distinction is made between those orders that dispose of the claim for relief on the merits or on jurisdictional grounds and those that relate only to pretrial procedures: the § 1292(a)(1) exception to the final judgment rule embodies orders that have a direct impact on the merits of a controversy or on the legal sufficiency of the complaint. *See, e.g.*, *General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 433 (1932) (an order dismissing on jurisdictional grounds a counterclaim seeking injunction was held to be appealable under § 1292(a)(1)); *cf. Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 481-82 (1978) (an order that merely limited the scope of the injunctive relief sought was not immediately appealable). Here, the order to return the subject records was a final determination of Appellees' Rule 41(g)

claim contained in their complaint. The return of their records was sole remedy sought under Rule 41(g).[5]

The second general prerequisite to interlocutory review under *Carson* is that the litigant must show that the order that had the practical effect of granting or denying injunctive relief "might have 'serious, perhaps irreparable, consequences,' and that the order can be 'effectively challenged' only by immediate appeal." *Carson*, 450 U.S. at 84; *Cuomo v. Barr*, 7 F.3d 17 (2d Cir. 1993) ("[F]ailure to exercise appellate jurisdiction [will] . . . likely . . . render ineffectual any relief that might result from an appeal from a final judgment in the litigation pending below."); *see also Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council*, 839 F.2d 69, 75 (2d Cir. 1988). As discussed above, the order here would have irreparable consequences, since the order requires the destruction of the government's copies of the records and the return of the originals to Appellees, who, under Judge Underhill's order, would be under no obligation to retain the records. Any later appeal upon the final resolution of the merits of the *Bivens* suit would be unable to provide a remedy to the government on the return of property claim. This situation justifies

---

[5] The Appellees did not seek the destruction remedy that was imposed by the district court.

treating the order as an injunction. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 632 (2d Cir. 1995) ("An order has the practical effect of granting injunctive relief within the meaning of section 1292(a)(1) if it is . . . designed to accord or protect some or all of the substantive relief sought by a complaint[.]") (internal quotation marks omitted); *Weight Watchers of Phila., Inc. v. Weight Watchers Int'l Inc.*, 455 F.2d 770, 774 (2d Cir. 1972) (interpreting § 1292(a)(1) as applying only to "injunctions which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not [to] restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial" (internal quotation marks omitted)).

Finally, in their second amended complaint, Appellees specifically sought "*[i]njunctive relief* in the form of an order requiring that the material seized be returned to its rightful owner(s)" (R. 34 at 6 (emphasis added)). Accordingly, they should be estopped from claiming (*see* Appellees Br. 22) that the district court's order granting this relief was not in the form of an injunction.

### C.  Mandamus pursuant to 28 U.S.C. § 1651(a).

The All Writs Act empowers this Court – and "all courts established by Act of Congress" – to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

 One such writ is the writ of mandamus, an "extraordinary remedy" that has been used "both at common law and in the federal courts . . . to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction."  *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).  The term "jurisdiction" is not confined to "an arbitrary and technical definition," but encompasses any "exceptional circumstances amounting to a judicial 'usurpation of power' or a 'clear abuse of discretion.'"  *Id.; see Sims v. Blot,* 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it [has] based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or [has] rendered a decision that cannot be located within the range of permissible decisions." (brackets, citations, and internal quotation marks omitted)).

Three conditions must be met before a writ of mandamus may issue: (1) the party seeking issuance of the writ must have no other adequate means to attain the relief [it] desires"; (2) "the issuing court, in the exercise of its

discretion, must be satisfied that the writ is appropriate under the circumstances"; and (3) the petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable." *Cheney*, 542 U.S. at 380-81 (brackets, citations, and internal quotation marks omitted); *accord Kerr v. U.S. Dist. Court for N.D. Cal.*, 426 U.S. 394, 403 (1976). Each of these conditions has met in the situation presented here.

First, as discussed above, the government has no other adequate means of attaining relief. If the original records are returned to the sole possession of Appellees, nothing in the order prevents them from destroying the records – an irreversible act. The requirement that the government destroy its copies of the records is similarly irreversible. Second, the exercise of discretion to construe the government's appeal as a writ is appropriate under the circumstances. This Court, for example, has previously exercised mandamus for interlocutory review of discovery orders that implicate privilege. *See Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992). In this case, the potential for irreparable harm is not only greater than a breach of privilege, but the government is presented with conflicting district court orders. Also presented here is disregard of the principles of comity by a court sitting in a civil case jumping in front of a court sitting in a criminal case. Indeed, the district court here refused reconsideration notwithstanding the denial in the

criminal case of the identical Rule 41(g) claim concerning the same property. This is an extraordinary situation in which mandamus is merited.

Finally, the government has a "clear and indisputable" right to relief, *see In re City of New York*, 607 F.3d 923, 933 (2d Cir. 2010). First, the district court clearly abused its discretion by ruling without holding an evidentiary hearing on the matter, as the Rule 41(g) specifically requires. Second, the government is facing inconsistent district court orders regarding disposition of records. Third, the district court clearly erred by apparently accepting plaintiff's claim that the records were "non-responsive" and not currently being utilized in any criminal proceeding. Fourth, there was a prior stipulation of the parties allowing the government to retain the documents. Finally, the district court's only legal basis for requiring the return or destruction of the records – the *Ganias* panel opinion – has been overruled.

### D. Government has not "waived" jurisdiction for this appeal

To the extent that Appellees argue (*see* Appellees Br. 23-24) that this Court cannot rule that it has jurisdiction on a ground not identified in the government's opening brief, they are wrong. The Supreme Court and this Court have consistently held that appellate jurisdiction "can be neither conferred by consent nor waived." *Athan v. Hartford Fire Ins. Co.*, 73 F.2d 66, 67 (2d Cir. 1934) (emphasis added) (*citing, inter alia, Chicago, B. & Q.R. Co. v. Willard*,

220 U.S. 413, 427 (1911)).  Although an appellant is required to state the basis for appellate jurisdiction under Fed. R. App. P. 28(a)(2), that requirement was added in 1991 "to aid the court of appeals in determining whether it has both federal subject matter and appellate jurisdiction."  *See* Fed. R. App. P. 28 (advisory committee note).  It is not a jurisdictional prerequisite and a failure to comply with Rule 28 does not deprive the appellate court of jurisdiction.  *See Rivas v. City of Passaic*, 365 F.3d 181, 190-91 (3d Cir. 2004) (quoting *Marcaida v. Rascoe*, 569 F.2d 828, 830 (5th Cir. 1978)) (considering failure of appellant to submit a brief).  Sections 1291 and 1292 do not confer substantive appellate rights; instead, they provide the appellate courts with statutory subject matter jurisdiction.  A party cannot waive such subject matter jurisdiction.  *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 387 (1978); *U. S. Envelope Co. v. Transo Paper Co.*, 229 F. 576, 579 (D. Conn. 1916) (collecting cases).

Indeed, this Court has consistently found that it has subject matter jurisdiction notwithstanding a party's failure to properly allege the basis of such jurisdiction.  For example, in both *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 324 (2d Cir. 2001), and *Kamerling v. Massanari*, 295 F.3d 206, 213-14 (2d Cir. 2002), the appellants argued that jurisdiction existed under § 1291 to appeal a final judgment of the district court.  In each case, this Court found that jurisdiction under § 1291 was lacking, but *sua sponte* held that jurisdiction

existed under § 1292(b) to review the denial of injunctive relief. And in *Swede v. Rochester Carpenters Pension Fund*, 467 F.3d 216, 219-20 (2d Cir. 2006), this Court found that appellate jurisdiction was proper under § 1291 where judgment became final after the notice of appeal was filed. That is, although the appellant could not properly allege subject matter jurisdiction at the time of the appeal, that lack of a jurisdiction basis was cured later. In addition, this Court has held that it may construe an appeal from a non-final order as a petition seeking a writ of mandamus. *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991).

## II. THIS COURT SHOULD VACATE THE DISTRICT COURT'S "RETURN AND DESTROY" ORDER

The government moved to dismiss Appellees' Rule 41(g) claim primarily on the ground that the records sought were being utilized in criminal investigations. (R. 55 at 2.) In the alternative, the government moved for summary judgment on the basis that Appellees' claim was moot because originals of the documents had already been returned to the custodial possession of Appellees' counsel, Halloran & Sage LLP. (As noted, the Appellees' complaint did not seek destruction of the copies in the government's possession; the district court ordered destruction of copies without that relief having been requested by the Appellees.) The government did not open the door for an adverse merits determination and the

district court did not cite, or rely upon, any of the evidence submitted by the government as the basis for its merits ruling.[6]  Further, Rule 41(g) specifically requires an evidentiary hearing, a hearing that the district court never held, and the absence of which resulted in erroneous factual determinations.  *See* Fed. R. Crim P. 41(g) (providing that "[t]he court *must* receive evidence on any factual issue necessary to decide the motion." (emphasis added)).

The government provided two declarations to demonstrate that 322 boxes of original records had already been returned to Appellees or their counsel, and therefore that Appellees' claim for "return" of their property was moot.  (GA 52-56; R. 40-1, 40-2.)  The declarations did state that the government retained two boxes of original records.  Appellees submitted no evidence in rebuttal, and no additional evidence was elicited at the December 4, 2014 motions hearing.  Indeed, Appellees conceded in their opposition papers that "[t]he fate of the plaintiffs' property is disputed and unresolved and thereby leaves material facts to be determined by the fact finder."  (GA 66; R. 45 at 10.)  And Judge Underhill stated at the hearing that it was premature to consider the merits of the Rule 41(g) claim.

---

[6] Appellees did not file an independent Rule 41(g) motion, but only pleaded a claim in their complaint.  (GA 73, 83.)  In addressing the Rule 41(g) claim Judge Underhill stated, "I'm not prepared to take up the summary judgment.  I think it's appropriately a motion to dismiss at this point."  (GA 79; R. 58 at 12-13.)

(GA 78; R. 58 at 11.) Appellees simply are incorrect to assert that the district court's order was somehow based on evidence submitted by the government. The evidence does not support the findings of the district court; had the district court credited those declarations, it would have reached the opposite conclusion. The lack of an evidentiary hearing led the district court to adopt clearly erroneous facts. *See Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994) ("[a]t the very least, the district court was required to take evidence and make factual findings" regarding the fate of the property seized before disposing of the motion). At the time of the order, the government was using approximately a dozen boxes of these records in the Connecticut criminal case; also, *all* of the seized documents at issue here were the subject of the motion for return of property that Judge Chatigny denied in the criminal case. The district court's determination that the records, other than the records in the two retained boxes, were "non-responsive" was therefore erroneous and its order directing the return and destruction of all records except those contained in the two boxes was improper. And contrary to Appellees' assertion, the district court's order was entirely inconsistent with the order of the district court in the criminal case, which denied the return of *any* records. Plaintiffs' assertion that the orders are consistent – apparently because the order purported to only require the government return or destroy "non-responsive" records while the criminal court's order allowed the government to retain all "responsive" records –

is disingenuous, at best. The district court here erroneously determined that all but two boxes of records were non-responsive, and ordered their return or destruction. In fact, except for the fate of the two boxes the district court allowed the government to retain, the two orders are wholly irreconcilable.

A district court presiding over a civil *Bivens* case should not – and indeed cannot properly – decide what documents are to be used in a criminal case before a different judge. Judge Chatigny's order in the criminal case denying that Rule 41(g) motion was entered after receiving cross-motions, including Carpenter's 34-page motion (No. 3:13-cr-226-RNC, R. 82-83), the government's 75-page response (*Id.* at R. 98), plus 275-pages of sealed materials that included grand jury materials (*Id.* at R. 97-2), and after holding a full-day hearing (*Id.* at R. 119).[7] He has now also presided over a 12-day bench trial. *See United States v. Carpenter,* 190 F. Supp. 2d 260 (D. Conn. June 6, 2016) (Verdicts and Special Findings). The

---

[7] In denying return of records, the criminal court stated: "In this case, the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial. The defendant, on the other hand, has not established that he has standing to demand return of the vast majority of documents, which are in the nature of corporate records. Nor has he shown that he needs any of the documents in order to prepare his defense or for some other legitimate purpose. Balancing the interests of the parties in light of the delay caused by the privilege litigation, and the volume of the documents, the Government's retention of the documents pending further proceedings in this case is reasonable." *Carpenter*, 2015 WL 9461496 (Order Denying Motion to Suppress) (No. 3:13-cr-226-RNC, R. 155).

district court in the criminal case was the only court that could properly decide whether the documents were relevant to the criminal prosecution.

Appellees argue that this Court should not consider the existence of the prior Stipulation and Order (GA 192, 195) that allowed the government to retain the documents. They claim that the government did not raise the stipulation below. That is incorrect: in fact, the government raised the existence of the stipulation during the motions hearing, and also argued the preclusive effect of the stipulation in its motion for reconsideration. (GA 81, 140; R. 58 at 14.) Moreover, prior to issuance of the district court order to return or destroy the records, the government had no opportunity to fully argue the effect of the stipulation because the district court had specifically stated that it was *not* going to rule on the Rule 41(g) claim while the criminal case was pending (GA 78-79; R. 58 at 11-13), and because the district court never held an evidentiary hearing on the Rule 41(g) claim. In fact, Appellees' counsel below argued that it was "premature" to determine, without discovery, the effect of the stipulation. (R.58 at 14-15.) As the district court was made aware of the Stipulation and Order (Appellees' concede this: Appellee Br. 27 & n. 13), the court's failure to make any finding as to the effect of the stipulation – either accepting or rejecting its preclusive effect – was clear error.

Appellees claim (Appellee Br. 35) that the government's use of the term "comity" is a misnomer. Whether "comity" or "abstention" is the proper term, this

Court has specifically held that a district court presiding over a civil case has discretion to – and should – abstain from deciding Rule 41(g) issues when there is a parallel criminal case pending. *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006). If such discretion exists, then such discretion can be abused. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A.*, 412 F.3d 418, 422 (2d Cir. 2005) (equitable abstention is reviewed for abuse of discretion). The district court in another of Appellees' *Bivens* actions properly exercised its discretion and abstained from ruling on another Rule 41(g) motion. The district court here abused its discretion by not abstaining. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) ("it is within the power of the district court, and in accord with common practice, to stay a civil action that may conflict with a criminal action until the criminal case or the likelihood of a criminal case is ended."); *United States v. Dean*, 80 F.3d 1535, 1542 (11th Cir. 1996) (equitable jurisdiction under Rule 41(g) "is only appropriate in exceptional cases where equity demands intervention"); *see, e.g,. United States v. One 1987 Jeep Wrangler Automobile*, 972 F.2d 472, 479 (2d Cir. 1992) (upholding dismissal of Rule 41(g) claim because it would "avoid problems inherent in parallel proceedings"); *United States v. An Antique Platter of Gold,* 1995 WL 758762, at *2 (S.D.N.Y. Dec. 22, 1995) ("When faced with situations where claimants have an available forum to contest the lawfulness of a seizure, courts routinely have refused to adopt jurisdiction over Rule 41[(g)] motions.");

*United States v. Huggins,* 2013 WL 1728269 at *2-7 (S.D.N.Y. March 22, 2013) (declining to exercise jurisdiction over independent Rule 41(g) action where a related criminal case was pending). The abuse of discretion in declining to abstain is especially notable here since the criminal case involved the very same records, and both claims for return of the records were based on the argument that the documents were the subject of an "unreasonable and unlawful search and seizure of property without a valid search warrant" and that the documents were "seized by the government in violation of the Fourth Amendment." (R. 34 at 6.) The district court here granted Rule 41(g) relief without addressing that contention. Indeed, no court has found the warrant or search to have been improper.

Plaintiffs argue that this Court should remand to allow the government to file a second motion for reconsideration. But the case law imposes no such requirement. *See Glinka v. Maytag Corp.*, 90 F.3d 72, 74 (2d Cir. 1996); *Madden v. Town of New Haven*, 359 Fed. App'x 204, 2009 WL 5159770, at *1 n.3 (2d Cir. Dec. 31, 2009); *In re Bethlehem Steel Corp.*, 144 Fed. App'x 167, 2005 WL 1977343, at *1 (2d Cir. 2005).[8] Indeed, the law does not allow a party to toll the

---

[8] In *Glinka v. Maytag Corp.*, 90 F.3d 72, 74 (2d Cir. 1996), this Court established that a subsequent notice-tolling motion under Fed. R. App. P. 4(b) does not again reset the filing date for a notice of appeal. Thus, this Court lacked jurisdiction over an appeal that was filed more than 60 days after the denial of the

(continued...)

time for filing a notice of appeal by filing successive reconsideration motions; thus, the government was required to file a timely notice of appeal after the denial of its motion for reconsideration. *Glinka*, 90 F.3d at 74. Also, contrary to Appellees' contention, the fact that the court has stayed its order does not make the order non-final. *See Johann Maria Farina Gegenuber Dem Neumarkt v. Roger & Gallet,* 296 F.2d 119, 119-20 (2d Cir. 1961); *see also United States ex rel. Bauer v. Shaughnessy,* 178 F.2d 756 (2d Cir. 1949).

Appellees assert (Appellee Br. 14) that accepting the government's position and reversing the court's "return and destroy" order would be tantamount to allowing the government to "permanently" retain records without recourse. That is not true. Appellees may seek return of the documents by renewing the Rule 41(g) motion before the criminal court. The government will, however, vigorously

---

(…continued)

first Rule 59 motion. In *Madden v. Town of New Haven*, 359 Fed. App'x 204, 2009 WL 5159770 at *1 n.3 (2d Cir. Dec. 31, 2009), this Court stated that "successive motions for reconsideration do not repeatedly toll the notice of appeal filing period under Rule 4(a)(4)." In *In re Bethlehem Steel Corp.*, 144 Fed. App'x 167, 2005 WL 1977343 at *1 (2d Cir. 2005), appellant Smith's motion for reconsideration was denied on September 28. Smith filed a second motion for reconsideration which was denied on October 25. On November 8, Smith filed a notice of appeal. This Court held that it "lack[ed] jurisdiction to consider the district court's dismissal of Smith's appeal because Smith did not file his appeal within thirty days of entry of the district court's denial of reconsideration." *Id.*

oppose such a motion until the final resolution of the criminal case (as mentioned above, Carpenter has not yet been sentenced and only filed his post-conviction motions on March 15, 2017).

In sum, the district court's failure to hold an evidentiary hearing was reversible error.  Given that approximately one dozen boxes of documents were being used in the Connecticut criminal case before Judge Chatigny, the court below made clearly erroneous findings of fact when it determined that the documents were "non-responsive" and "unrelated to a criminal or civil proceeding."  Moreover, the district court wrongly accepted Carpenter's assertion of an ownership interest in all the records without analysis or evidence, in conflict with representations in prior proceedings that the entity Benistar Administrative Services was the owner and custodian of the seized property.  (*See* Gov't Br. 9-11, 24-25.)  Furthermore, the order created conflicts with the earlier Stipulation and Order and with Judge Chatigny's order in the criminal case.

Finally, a Rule 41(g) claim for return of property is "an equitable remedy that is available only when . . . the equities favor the exercise of jurisdiction." *One 1987 Jeep Wrangler*, 972 F.2d at 479 (2d Cir. 1992); *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012).  Appellees have made no argument as to why the equities favor giving sole possession of the records back to the orchestrator of the fraud.  *Cf. United States v. Howell*, 425 F.3d 971, 974 (11th

Cir. 2005) (For a district court to grant a Rule 41(g) motion, the "owner of the property must have clean hands."); *United States v. Davies*, 601 Fed. App'x 97, 99 (3d Cir. 2015) (district court did not abuse its discretion in denying motion for return of computer equipment used in connection with crime; "inequitable to return [equipment,] which Davies admittedly used to carry out his crime").

The same Rule 41(g) claim has now been litigated multiple times. This court should vacate Judge Underhill's order, and hold that the Rule 41(g) order entered in the criminal case by Judge Chatigny is now *res judicata* as to Appellees' Rule 41(g) claims and direct that any additional claims be filed in that court.

CONCLUSION

For the reasons stated above, the district court's order for the return or destruction of documents pursuant to Rule 41(g) should be vacated.

Respectfully submitted,
DAVID HUBBERT
  *Acting Assistant Attorney General*

s/ Mark S. Determan
S. ROBERT LYONS  (202) 514-5396
  *Chief, Criminal Appeals &*
  *Tax Enforcement Policy Section*
GREGORY VICTOR DAVIS     (202) 514-5396
MARK S. DETERMAN     (202) 514-9245
  *Attorneys, Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*
  *Mark.S.Determan@usdoj.gov*

*Of Counsel:*
DEIRDRE M. DALY, ESQ.
  *United States Attorney*

DATED: March 20, 2017

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and has been prepared in a 14-point, proportionally spaced typeface (Times New Roman) using Microsoft Word 2010.

s/ Mark S. Determan_____
MARK S. DETERMAN
*Attorney for the United States*

Dated: March 20, 2017

CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Service of all parties in the case that are registered CM/ECF users will be accomplished by the appellate CM/ECF system.

s/ Mark S. Determan
MARK S. DETERMAN
*Attorney for the United States*